**ILLINOIS FARM SUPPLY COMPANY,**
Appellant,

v.

**GREENVILLE GRAVEL COMPANY and**
**Witco Company, Appellees.**
**No. 20870.**

United States Court of Appeals
Fifth Circuit.

Sept. 9, 1964.

James E. Ross, Houston, Tex., John F. Ensle, Houston, Tex., of counsel, for appellant.

C. S. Tindall, Jr., Douglas C. Wynn, Greenville, Miss., Wynn, Hafter, Lake & Tindall, Greenville, Miss., of counsel, for appellees.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

PER CURIAM:

The collision occurred before daylight at about 3:00 A.M. on March 8, 1961 on the Arkansas side of the Mississippi River just below Chicot City Point. The water was high and the current swift. There was no atmospheric interference with visibility.

The dredge Lee McCourt, owned by the Greenville Gravel Company, was anchored outside of the main navigable channel approximately 1,000 feet from the Arkansas shore and about 2,000 feet west of the Mississippi bank. Its two anchors attached to cables were about 1,000 feet upriver. There were no buoys on the anchors. Three steel barges were tied to the starboard side of the dredge. The lights on the dredge and barges were visible at a distance of at least two miles.

The M/V Illini was pushing three empty barges down the River. Its pilot decided to attempt to pass between the dredge and the Arkansas shore. The current at that point runs across river, from west to east. The action of the current and the westerly wind caused The Illini to get out of control and to slide into the dredge and its barges with resulting damages in excess of $46,000.

The facts are more fully stated in the opinion of the district court reported at 215 F.Supp. 560. The district court found that the faults of The Illini were the sole cause of the collision and entered judgment against it and its owner.

The appellant urges that The Illini should have been exonerated under the major-minor fault doctrine, because the dredge was guilty of serious statutory faults.

The district court found that when the master of the dredge realized a collision was imminent, he blew only two blasts on the dredge whistle and then immediately ran through the dredge warning the crew to abandon the ship. The district court excused the failure to blow a danger signal because the master was acting "in extremis," and the peril was discovered so late as to render a danger signal useless. Captain Coats, the pilot of The Illini testified:

"Q. Do you know of anything that the dredge could have done at that point to avoid the collision?

"A. Not that I know of."

It is clear that the failure to blow the danger signal did not contribute to the collision.

The district court found that, "Since the dredge was not anchored in the navigable main channel, lighted or marked anchor buoys were not required. Coast Guard Regulations 33 CFR § 95.51."

That conclusion is vigorously attacked by appellant and strongly defended by appellees. The issue need not be decided on this appeal, because the collision was with the dredge itself and failure to light or mark the anchor buoys was clearly raised as a mere afterthought. We are convinced that if such lighting and marking were required, the failure did not cause this collision, and was so minor a fault that it would not change the result.

Underlying the findings of the district court is its conclusion that any failures of the dredge or its crew were not (and we would add could not have been) a contributing cause of the collision. We agree with the facts as found by the district court and affirm its judgment.

Affirmed.